## JOHN E. JORDAN v. BELFIELD MILLER.

ACTION brought in Greenwood district court, by *Jordan* against *Miller,* to recover $2,500 damages. The nature of the action, and the facts, appear in the opinion. Trial at the November Term, 1879, of the district court, and judgment for the plaintiff for $10. *Jordan* brings the case here.

*Scott & Lynn,* and *G. C. Rogers,* for plaintiff in error.

*T. L. Davis,* for defendant in error.

*Per Curiam:* This was an action brought by John E. Jordan against Belfield Miller, to recover $2,500 as damages re-

sulting from alleged fraud in making a contract, and from alleged breaches of the contract after it was made. A trial was had before the court and a jury, and the jury rendered a verdict in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages at $10. The plaintiff moved for a new trial, which motion the court overruled; and the plaintiff now brings the case to this court, and asks that the judgment of the court below be reversed and the cause remanded for a new trial. The plaintiff claims that the verdict was wrong in assessing his damages at only $10 instead of some vastly larger amount. We think the verdict was wrong; that it should have been in favor of the defendant, and that the plaintiff should not have recovered any damages.

The plaintiff alleges in his petition that he purchased some timber standing and growing on certain land, which the defendant claimed belonged to him, and was free and clear from all incumbrances; but that the land was not free and clear from incumbrances; that the land was mortgaged, and that to take the timber which he had purchased from the land would leave the land insufficient security for the mortgage; that after he commenced to remove the timber from the land, the mortgagees commenced an action to enjoin, and did enjoin the defendant and himself from removing the timber from the land, to the damage of the plaintiff in the sum of $2,500. The defendant, however, claims that he did not represent to the plaintiff that the land was free and clear from incumbrances, and that although one piece of land was mortgaged for $1,500, yet that the mortgaged property was ample security for the debt; and that the mortgage had previously been recorded, so that every one could have notice thereof. The mortgagees reside in Connecticut, and their agent in Kansas resides at Humboldt, and neither the mortgagees nor their agent ever commenced or prosecuted any such action as alleged by the plaintiff; but that the plaintiff, desiring to be relieved from his contract, and desiring to procure an injunction to restrain himself and the defendant from removing the timber from the land, went to Humboldt to see the agent of the mortga-

gees, but not finding the agent, he prevailed upon two of the agent's friends to commence the action to enjoin himself and the defendant from removing said timber; and that the action was so commenced; and that on the same day that the injunction was served upon the plaintiff and defendant, the plaintiff commenced this action against the defendant for damages alleged to have been caused by reason of said injunction; and that the same attorney from whom the plaintiff took counsel in all the foregoing matters was an attorney of record for the plaintiff and *against* the defendants *Jordan* and Miller in the injunction suit, and was the attorney *for Jordan* at the commencement and during the prosecution of this action for damages. The defendant also claims that on the day on which the injunction was served upon Jordan and himself he told Jordan that he would go to Humboldt and obtain a release of the injunction, and that Jordan agreed that he would remain at Toronto, Woodson county, Kansas, where they then were, until Miller got back. Miller went to Humboldt, obtained a release of the injunction, upon condition that Jordan should pay the mortgagees for the timber, instead of Miller, to which Miller consented. Miller returned to Toronto the next day, but Jordan was nowhere to be found. He then went to Eureka to find Jordan's lawyer, who was not to be found. He left notice of what had been done in the lawyer's office, with a gentleman who was then in the office, and this gentleman gave the notice to Jordan's lawyer when he returned, and requested that the same should be sent Jordan; but the lawyer says that he never read it or sent it to Jordan. A notice with reference to the matter was, however, afterward served upon Jordan by the sheriff of Lyon county. In all probability, however, Jordan had full notice of the release of the injunction immediately after the release was agreed to; but whether he did or not, is immaterial. Miller informed all the employés of Jordan who were cutting timber or working in that vicinity in the saw-mill belonging to Jordan, on the next day after the release was granted.

We think the preponderance of the evidence will sustain

the claim of the defendant.   The plaintiff sustained no damage, unless it was because of said injunction; and it was at his instance that the injunction was obtained, and except for his own statements and importunities, the injunction never would have been obtained, or issued, or even asked for; and the mortgagees and their agent still repudiate the commencement of the action in which it was obtained, for they considered their security ample without the commencement of any such suit.

We certainly cannot say that any error was committed in this case, to the prejudice of the plaintiff.   But we do think that error was committed to the prejudice of the defendant. It must be remembered that this action was commenced on the very same day and immediately after the injunction was served upon the plaintiff Jordan.   Indeed, he had all the papers made out for the commencement of this action before the injunction was served upon him, and was merely waiting for it to be served upon him, so that he could file them, and thereby commence this action immediately after it was served upon him.   Now was the plaintiff damaged to the amount of ten dollars, or to any other amount, when this action was commenced?   How long had he been restrained by the injunction from removing timber when this action was commenced?   On the next day after the injunction was served it was released, conditionally, as before stated.   What was the amount of his damage, then?   Was he damaged to the amount of ten dollars, or to any other amount, when the injunction was released ? But the injunction itself was in reality his own injunction; and it was wrongfully obtained, in whatever aspect we may consider the case.   It was wrongful, because there was no good ground or even excuse for its issuance in favor of any person; it was wrongful, because the parties in favor of whom it was seemingly issued did not want it to be issued; and it was wrongful, because it was procured by the plaintiff in this action, merely in furtherance of a wrongful scheme of his own.

It is unfortunate that the jury did not find a verdict in

favor of the defendant; but as the defendant is not the complaining party in this court, the judgment of the court below must be affirmed.